Mr. Vasquez admits was more severe than necessary and created unwarranted sentencing disparities among a particular group and that is a similarly situated offenders who were part of a by bus sting operation conducted by the Bureau of Alcohol, Tobacco and Firearms in Albuquerque in the period from April through September of 2016. Mr. Vasquez tried to impress upon the court at the time of sentencing this was a by bus operation that had netted more than 100 defendants most of whom had sold drugs and there was no one in this group who sold a smaller amount of drugs than Mr. Vasquez and yet he received a sentence that was one of the longest sentences up to that point that had been meted out by the district court in any of these cases. Of course most of that is reflective of his status as a career offender but when we talk about the nature and circumstances of the offense he only became a career offender because he had sold one-tenth of a gram of methamphetamine for $40. And so under the career offender guidelines counsel at the sentencing hearing tried to point out that the career offender guidelines are honored mostly in the breach that district courts both throughout the 10th circuit and nationwide will vary or depart downward in career offender cases in over 80% of the cases. And of course that's what happened in this case too. And of course that's what the district court did. The argument is you don't think they should down or deported enough. We're getting greedy. But again with one-tenth of a gram I mean if he would have been charged for outrageous pricing that's a different offense but a tenth of a gram is barely a usable quantity and the government was concerned at sentencing that well this individual Mr. Vasquez he had some grand talk and he had some big plans and he knew what drugs sold for. But that's not unusual in the confines of this sting operation. In fact as the court was aware at sentencing many of the people who were implicated in the sting made promises of being able to deliver the sun the moon and the stars and a thousand pounds of methamphetamine and time and time again you had people running their mouth who were not able to deliver. And counsel said that's more like Mr. Vasquez than these for example at the highest end of this case was someone who sold I believe over 2,000 pounds of methamphetamine. And counsel I think that the sentencing court level was inventive in trying to point out that when we looked at the sentences that were imposed up to that time we looked at days per dollar of bank for the buck. If you got one dollar's worth of drugs how many days of incarceration would you have served and according to counsel that was about 113 days of incarceration per dollar paid by the ATF and Mr. Vasquez's sentence was 500 times more severe than the most culpable defendant using that analysis. Counsel can I just stop you there and ask you just to relate your arguments to our standard of review. Your honor we begin with the presumption that this sentence is reasonable and it is Mr. Vasquez's burden to come forward with evidence to show that it's arbitrary capricious or just beyond the pale. And while I can understand and have to accept that as a career offender even having sold a tenth of a gram of methamphetamine Mr. Vasquez is subject to those career offender guidelines. But when you look at the totality of the circumstances which the court is required to do in assessing the reasonableness of the sentence we begin to see that the first thing that the court must consider the nature and circumstances of the offense it just doesn't fit. Again I get that it doesn't fit but you just repeated the standard of review isn't it. It's a daunting standard. And I want you to tie it with that. It doesn't fit but help me understand. And it's not only an exacting standard in any case it's an exacting standard where the district court varies downward and still the defendant objects. So there are some circumstances that under looking at the three five five five three five five three factors the court might be troubled. And those are the things that we're trying to tie it to here in this proceeding. Primarily that you can look at similarly situated defendants because as the court is aware you can look at the sentences co-defendants receive. And so if co-participants are part of the same organized undertaking then sentences imposed in that situation are relevant for review. And of course a felon who delivers a firearm to an undercover law enforcement might in some circumstances be viewed differently than a felon who's driving around with a gun in his jacket and is stopped by police who do not know this person is a felon. So that the level of although the harm that Congress ought to punish is present here the risk of harm is somewhat lower given the circumstances of this case. And more than anything else we have a by bus sting operation where the sentences were consistently below the sentence recommended by the United States sentencing guidelines. These cases were the subject of much litigation and continue to be the subject of litigation and so the idea that other defendants were receiving consistently below guideline sentences and Mr. Vasquez was sentenced as a career offender under any of the layers of analysis whether it's the length of the offense level increase whether it's the length of the actual sentencing range increase from the guidelines provided by the drug guidelines versus the career offender guidelines under any analysis. When the court considers all the facts marshaled by Mr. Vasquez it seems that the sentence exceeds the bounds of permissible choice. Did the district court here find as a matter of fact that this defendant had the intent to sell an ounce of cocaine? Yes sir. All right. So I don't know how we can conclude that's clearly erroneous because that's the district court observing all the evidence in the record before them. If we accept that the district court finding is binding now or not binding but at least not reversible that he had the intent to sell an ounce then where is the where is the inequity in because that would then trigger everything that tumbles down through career offender. Where is the inequity then? Isn't it phrased another way wouldn't we have to overturn that district court finding is clearly erroneous before we really can give you relief. I don't believe so Judge Ebel because I intend to win the lottery but I've got to buy a ticket and if Mr. Vasquez did not have the means to deliver on these promises and as counsel suggested at sentencing. If he was offering his roommates personal use amount of narcotics to stall these agents while he attempted to marshal the. We don't know that I mean the record doesn't show that he did not have the means all the record shows is that in this particular case the means didn't come together where he could produce. We don't know whether this was just pie in the sky I would like to fly to the moon or whether there really was a realistic possibility that just didn't work out this time. Well and I think there's some inferences that you can draw from the record which would suggest that he was unable to procure a significant. We know he didn't ultimately procure it but lots of people that have the intent and have the potential means are convicted even though they can't follow through on things. That's right but when you look at the circumstances of this case we can say to start with that Mr. Vasquez did not have the immediate access to the drugs and the firearms. It's actually another wrinkle of this ATF sting cases that the ATF officers were arresting brokers but not arresting sources of supply because the target of the sting was the broker. And so many people were confronted out on the streets of Albuquerque with above market prices for both cocaine and methamphetamine and firearms. And that created an incentive for these people to try to go and patch together their associations and criminal networks to see if they could get in on the crazy white guys who came to town looking for guns and drugs and were paying too much for them. I assume that this was the argument that was made before the district court that you're making now. I think that counsel for Mr. Vasquez relied on the district court's personal understanding of the circumstances. That doesn't answer my question. I assume that this argument that you're making before us was made before the district court. The details that I'm explaining to you now are not in the record so I think the direct answer would be it's hard to say but when we were referring to the sting and even the judge herself says it's clear that he's not the same as the other defendants in the sting. The court had a reference point and that reference point I think was a subject of widespread knowledge because of the nature of a hundred new defendants coming in before all these judges. Your argument to us as I understand it is that regardless of what the trial court had before it, we've got the same facts and we're going to have to say that the trial court absolutely committed reversible error by not doing what you wanted them to do. Yes, we're saying that under the record that the sentence given. So where do we start? The minuscule amount of drugs. Of all these cases, a hundred defendants, this is the smallest. Wait a minute. You're comparing apples and oranges. Your argument is in regards to these hundred that there was an improper sentence in regards because he was given way too much. But doesn't the guideline say that you compare it with what's going on in the entire country? Yes, sir. Did you do that? Did you say that the sentence that he got when you look at the guidelines of what's going on everywhere else is way far and above? Yes, your honor. Now where is that? And that's in the comparison when we talk about the increases in the offense levels. That the offense level for the average career offender is usually eight levels in an increase. And Mr. Voskes' offense level was increased 19 levels by virtue of the criminal history or the career offender guidelines. And we're using as a starting point the methamphetamine sale, not the firearm sale because as you know, you can't be a career offender for just having a firearm. But if you sold a drug and then you had previous crimes of violence or drug distribution offenses, that nationwide, the counsel argued that the standard career offender sentence is about seven years. That the average increase in offense level is eight levels. And here we have a defendant with a 10-year sentence, an offense level increased 19 levels. That counsel argued that in 80% of the cases the court departs downward. And the court did depart downward here. And yet not in a manner that really gave Mr. Voskes the benefit of these nationwide and more discrete local disparities. Well, but we can't say that the trial court abused discretion or was wrong as a matter of law in downward departing because the trial court downward departed. Yes, sir. So I come back to the argument on the basis of what the court did. Your argument is they should have done more. And that's exactly the argument. And we would have to say based on the record that I'm looking at, on the briefs and the record we have before, yeah, she should have done more. And the only legitimate reason for reaching that conclusion is what counsel proffered at the sentencing hearing. Is there a point where an average eight-level increase, at some point does that average increase become so unreasonable that under the totality of the circumstances, such an increase is really indefensible given the nature and circumstances of the offense? It's a tall order, but I know that on behalf of Mr. Voskes, we'd ask the court to at least consider that. And I'll retain the balance of my time. Thank you. Thank you. Good morning again, and may it please the court. Counsel. In recognition of the district court's particular aptitude for sentencing and of the institutional role of the Sentencing Commission, this court affords a presumption of reasonableness to any sentence imposed within the guideline range. That presumption of reasonableness extends on appeal to any sentence challenged below the guideline range as too long. In the 13 years since Booker, this court has never reversed a sentence as too substantively long, not one above guideline sentence, not one within guideline sentence, and certainly not any below guideline sentences as Mr. Voskes received here. Voskes has not made a case to be the first. Here and below, both he's emphasized that he sold a small quantity of drugs. But Voskes was not sentenced to 120 months in prison because he sold a small quantity of drugs. He was sentenced to that length of term because he is a repeat offender with a violent criminal history spanning almost 30 years, who sold a quantity of drugs, who displayed every intention of selling vastly more than that quantity of drugs. The district court found that he was someone who had every expectation of selling more drugs than he actually did. And he was sentenced to that length because he... Has that been a factual finding, that this was a realistic and genuine belief by the defendant that he could come up with that extra volume? It's a finding that he intended to come up with that and expected to come up with that additional volume of drugs. I don't think it's a finding that it was realistic. I don't know whether that is true or not. But the way that he was interacting... So where does that fall? I mean, is realistic a requirement or not? No, it doesn't need to be a realistic... So a guy could say, I know I'm crazy, but I really believe Martians are going to come down and give me extra drugs. And I truly, truly, truly believe that. Would we say that's a legitimate basis for the larger amount that he thought he could sell? We would have a competency issue in that case. A what? A competency issue. But here, we've got nothing that's that crazy. This is somebody who knows a lot about the drug business for somebody who is now claiming that this was all pie in the sky bragging. He doesn't just know the daily fluctuations of the price of methamphetamine. He knows the price offhand of a kilogram of cocaine. So I think that the way he is talking on the specifics back up the district court's conclusion that he at least had the expectation of selling more. But in addition to the factors I've already mentioned, Vasquez, despite being a felon in possession, prohibited from possessing any gun, discussed various guns that he had for sale with the confidential informant before selling that informant one of those guns. Those are the reasons that he got a 120 month sentence. Now he makes a lot of the comparison between his sentence and the others who were arrested in that same ATF sting. But the confines of the sting operation, as Mr. Pori put it, are frankly irrelevant to the disparity question, or they are at least no more relevant than the sentence that any other drug or gun offender in the country received. But he did address that bigger universe of sentences. He did, but his use of those statistics actually doesn't support his argument. According to Vasquez, the average career offender is subjected to an increase of 19 offense levels. It's actually eight. He agrees that he was subjected to eight offense levels, which is, I'm sorry, I got those mixed up. The average career offender gets an additional eight levels. That's what he got. He's saying he got an additional 19 levels because he's ignoring his gun charge and the impact that it had on his guideline range. But he can't just ignore that because it's inconvenient to him. He got exactly the same average increase as other career offenders get. And then looking at other nationwide statistics, a career offender whose primary offense is a drug charge, received in 2016 a mean sentence of 137 months and a median sentence of 120 months. But his sentence of 120 months is not at all out of step with national statistics for career offenders being sentenced on drug charges. And that doesn't even account for the additional gun charges that he faced. Going back to the disparities between other HEF defendants in this particular sting, there is so very little about these other defendants in the record. He offers up only 20 of the 104 total defendants, those who he says had been sentenced at the time of his proceeding. And for those 20, he uses the amount that each defendant was being asked to forfeit in their indictment as a proxy for the quantity of drugs that they had sold. And then he comes up with a days-in-jail-per-dollar-of-drugs-sold kind of metric. But there's a more serious problem with his argument about those people because he doesn't correlate them to career offenders. Exactly. I didn't find that particularly correlative, but he did talk about career offenders at a national level. Your point there is that if you looked at career offenders at a national level and you throw in guns, then he's not showing a disparity. That's not exactly my point. There's no disparity between him and other career offenders. When we look at those national statistics, we're not even looking at gun and drug defendants, which is FOSCAS. We don't have a category of statistics for those, but we can only assume that if he's in line with other defendants whose primary offense is drugs, some of those other defendants don't also have gun charges. So FOSCAS actually may be doing better for the seriousness of his conduct compared to other defendants nationwide. So your point is that even without guns, if we look at career offenders and drugs nationwide, 10 years is right at the target. That's right. There is no nationwide disparity. There's no local disparity supported by the record. The sentence the district court imposed was entirely reasonable. As Judge Baldock has pointed out, the district court was in fact persuaded by FOSCAS's arguments that he was not the biggest fish in this pond and concluded that a variance was appropriate based on the sentences of similarly situated defendants. The court just didn't place as much weight on that factor as FOSCAS would like. The court did consider that FOSCAS's drug offense was, quote, something that requires significant punishment, and that was before even considering the gun. And the district court further noted that he had a significant criminal history that it could not, quote, just brush aside. That long, violent criminal history most recently involved a conviction for an attempted robbery where FOSCAS created a near hostage situation by trying to collect a drug debt via threats of force to a man who had four children present. So you look at that criminal history, you look at the 3553A factors, the other factors that require the sentence imposed to afford adequate deterrence, to protect the public, and to promote respect for the law, all of those factors support the sentence imposed. FOSCAS has not met his burden of rebutting the presumption that the sentence was substantively reasonable, and this court should affirm. If I have, oh, thank you. And the only thing that Ms. Ross could possibly add is to suggest that you cannot ignore the role of the entire operation, particularly where with the judgments and statement of reasons presented to the trial court at the sentencing hearing, there's a consistent pattern of below-guideline sentences. So you have the person who sold the least amount of drugs getting one of the highest sentences. Yes, there were variables that affected it, but under the totality of the circumstances, the suggestion is the person with the least amount of drugs got the longest sentence in a sting operation where people were consistently receiving low-guideline sentences, and that's what makes it worse. But how many of these comparators also had a gun involved? Many. And how many of them, okay. And then, of course, there's the other about whether they had a criminal history that qualified them for career pay. And I believe at the time of the sentencing of the 20, there were only two others who had that criminal history. See, my time has expired. Thank you. I'm going to thank counsel. Counsel are excused.